**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CRIMINAL ACTION NO. 5:21-CR-00084-DCR**

**UNITED STATES OF AMERICA**                                                     **PLAINTIFF**

**V.**          **UNITED STATES' SENTENCING MEMORANDUM
AND MOTION FOR UPWARD DEPARTURE**

**HOSEA LEE, JR.**                                                          **DEFENDANT**

*************

In advance of sentencing in this matter, the United States of America, through counsel, sets forth its position with respect to the appropriate sentence for Defendant Hosea Lee, Jr. pursuant to 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines (U.S.S.G). The United States moves the Court for an upward departure resulting in at least an 80 month term of imprisonment in order to fashion a sentence that is sufficient considering aggravating circumstances of a kind and to a degree not adequately taken into consideration by the Sentencing Commission which warrant a greater term of imprisonment.

**I.**     **Background**

On July 23, 2021, a grand jury sitting in the Eastern District of Kentucky returned a thirteen-count Indictment, charging the defendant with two counts of deprivation of rights under color of law, in violation of 18 U.S.C. § 242, two counts of aggravated sexual abuse by force or threat, in violation of 18 U.S.C. § 2241(a), four counts of sexual abuse of a ward, in violation of 18 U.S.C. § 2243(b), two counts of abusive sexual contact, in violation of 18 U.S.C. § 2244(a)(4), and one count of providing contraband to inmates, in violation of 18 U.S.C. § 1791. [DE 1:

Indictment.] On April 15, 2022, the defendant pleaded guilty to Counts 3, 5, 6, 10 and 11 of the Indictment (sexual abuse of a ward). [Presentence Investigative Report ("PSR") ¶ 4; DE 39: Minute Order.] Pursuant to a plea agreement, the United States agreed to move to dismiss all other counts alleged against the defendant. [DE 40: Plea Agreement ¶ 1; DE 45: Amended Plea Agreement ¶ 1]

The defendant is a former BOP Officer who also held the position of a Drug Treatment Specialist within the U.S. Bureau of Prisons and worked in multiple BOP facilities in that role for approximately 7 years and 5 months, before resigning in light of these allegations. [PSR ¶ 11.] All of his victims were female inmates in the Atwood Camp at FMC Lexington, as well as the individual he attempted to groom who reported his misconduct initially.[1] Furthermore, all of these individuals were enrolled in classes he taught as the Drug Treatment Specialist[2] in furtherance of the U.S. BOP's drug treatment curriculum: a program meant to aid in the rehabilitation of inmates who demonstrate a need for this particular type of support.

The United States did not object to the Probation Officer's calculation that the defendant's total offense level was 15 as determined through the simple application of § 2A3.3 and units assigned via § 3D1.4 for the defendant's five offenses under the same statute given the defendant's Criminal History Category is I and the 3-level reduction pursuant to USSG §3E1.1(a) is proper. [PSR ¶¶ 52, 53, 57-58] The Probation Officer calculated the defendant's resulting applicable Guideline range to be 18-24 months and identified no basis for an upward departure. [*Id.* ¶¶ 80,

---

1 At the Sentencing Hearing, the United States anticipates calling DOJ OIG Special Agent Daniel McMahan to testify to some of the aggravating facts to support an upward departure, and expects that such testimony will last approximately 30-40 minutes.
2 PSR ¶¶ 7-8.

2

97.] The Probation Officer did not have access to the testimony of these victims before the Grand Jury. The defense did have access to and reviewed the unredacted transcripts of all four identified victims prior to entering a plea agreement and has been provided the opportunity to do so again prior to the pending hearing.

## II.    Argument

The advisory Sentencing Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis. *United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007) (citation omitted). Accordingly, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. King*, 553 F. App'x 518, 520 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)). Next, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to afford adequate deterrence; the need the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

### A.    Upward Departure Permitted Pursuant to Statute and U.S.S.G Policy Statements.

The United States filed no objections to the PSR; yet, a strict Guideline calculation fails to capture the compounded aggravating factors present in this case. Title 18 § 3553(b)(1) and (2) allow for an upward departure from a guidelines sentence when aggravating circumstances exist. Specifically, subsection (b)(2)(A)(i) explains crimes under Chapter 109A (sexual abuse crimes) should be sentenced within a range established by the applicable category of offense and offender

*unless* "the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described." The Probation Officer's calculation reflects the result of the application of the Sentencing Commission's guidelines, but this case is the exception to the application of those guidelines due to a number of aggravating factors.

In turn, U.S.S.G. Chapter 5 Part K incorporates this principle by echoing the statutory language generally which allows the Court to impose an appropriate sentence that *does* account for aggravating circumstances where the applicable guidelines do not adequately capture the seriousness of a defendant's commission of crimes. The guidelines call this an "upward departure." *See generally* U.S.S.G. § 5K2.0. Because this defendant's crimes are sex offenses, the policy statement guiding upward departures in this case reads:

> "The sentencing court may depart from the applicable guideline range if . . . , pursuant to 18 U.S.C. § 3553(b)(2)(A)(i), . . . there exists an aggravating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described."

The guidelines go on to provide, not only the option to rely upon individual aggravating circumstances "of a kind" or "to a degree" that the applicable guideline doesn't account for but also provides additional specific policy statements to account for offenses that caused victims more serious psychological injury in § 5K2.3 as well as extreme defendant conduct that is particularly egregious to support an upward departure on a § 5K2.8 basis.  Plus, § 5K2.21 specifies this Court may depart upward to reflect the actual seriousness of the offense based on conduct underlying a charge dismissed as part of the plea agreement in the case that did not enter

4

into the determination of the applicable guideline range.

In 18 U.S.C. § 2243(b), Congress criminalized *even* possible consensual sex with adult wards. That's why the element of consent need not be proven: Congress determined there can be no situation where a ward freely consents to a sexual act with an officer. That said, the guideline specifically drafted to apply in these cases provides ZERO bases for adjustment where adult wards are concerned. It's simply a 14 base level. All stop. This leads to the unconscionable result that the worst conceivable way an officer might sexually abuse a single ward in a single instance could still only result (assuming Criminal History Category of I) in a prison sentence of 14-21 months even though Congress clearly believed a single circumstance could warrant a 15 year term of imprisonment. The United States submits, the subject case is the case Congress and Sentencing Commission would agree warrants a significant upward departure given the limitations of the § 2A3.3 guideline.

The majority of the aggravating circumstances are already in the face of the Court. For example, the Probation Officer acknowledged force and threat were used by the defendant in the commission of his offenses against some victims – the applicable guidelines do not account for these factors in aggravation. The United States proposes the equivalent of a 1-level enhancement for each of these distinct aggravating factors the defendant used in the course of sexually abusing two of the victims, M.W. and A.H.. These are two examples of aggravating circumstances unaccounted for in the applicable guidelines.

Probation identified that the defendant not only was an Officer, but also held a more intimate position of trust with respect to his victims as their Drug Treatment Counselor – however, the guideline specifically precludes application of § 3B1.3. The United States interprets that

5

because the 2A3.3 guideline is used for § 2243(b) offenses, the position of trust as an Officer over a ward is the position this particular crime already assumes and accounts for in the base level of 14. The Sentencing Commission set the base level for this offense knowing full well that the crime itself necessitated that the perpetrator be in a public trust position over the victim. This does not account for this particular defendant's special role as a Drug Treatment counselor to these victims, which gave him virtually unfettered access to them and their complete histories, emotionally, physically, and psychologically, that regular Officers simply do not have. The equivalent of 2 levels should be added for this aggravating factor as to each victim.

Additionally, the guidelines do not adequately account for the degree of aggravation the defendant's numerous instances of abuse upon K.B., T.W., and A.H. demand. Probation notes generally the multiple occasions the defendant assaulted these victims– as does the defendant in his own admissions in the plea agreement. The equivalent of an additional level for every distinct instance the defendant sexually abused a ward should be applied.  The fact that the U.S.S.G. do not permit the grouping of individual assaults against individual victims, or even the same victim on separate occasions supports this recommendation. The United States accepts that the application of units to represent additional offenses added a 4 level increase pursuant to § 3D1.4; however, the victims of these offenses were assaulted many more times, even weekly, throughout the relevant time period except for M.W. who was caught alone by the Defendant on only one occasion.

The PSR also captures the defendant's introduction of contraband in tandem with his offenses – although this conduct is evidenced, no guideline accounts for it.  The equivalent of 1 level should be added to account for all circumstances related to the following factors in aggravation: 1) the defendant provided cigarettes, alcohol, suboxone, and other contraband to his

victims to entice them to engage in or conceal his sexual abuse, 2) three of the four victims contracted herpes after being sexually abused by the defendant – no guideline accounts for this harm; although, the United States concedes if sufficiently evidenced an order of restitution may satisfy this objective, otherwise a greater term of imprisonment should apply, 3) to account for the defendant's acts to conceal his crimes such as having bottled water on hand for his victims to ensure they swallowed his semen after he ejaculated in their mouths in his office, and imploring victims to keep the sexual abuse secret. This yields the equivalent of a Zone D sentence for this unique case but, after properly accounting for the defendant's timely acceptance of responsibility, a sentence adjusted accordingly falls, at a minimum, into the 80 month range of imprisonment.

This case, for all of the reasons highlighted in this memo and in light of the statements of the victims who have provided written statements of impact or who hope to be able to speak about the impact of the subject offenses against them, provide sufficient evidence to warrant an 80 month term of incarceration under § 5K2.3 alone: Extreme Psychological Injury. This is especially applicable here where the defendant was uniquely positioned to know the risk and appreciate the severity of psychological harm he was capable of inflicting. *See* U.S.S.G. § 5K2.3. Given the facts that the defendant used threats, physical force, employed contraband, took steps to conceal his abuse, and created romantic rouses fits the definition of cruel, degrading, and humiliating § 5K2.8.

      **B.**     **The 3553(a) Factors Support 80 Months of Incarceration.**

The sentencing factors set forth in 18 U.S.C. § 3553(a) support a sentence of at least 80 months' imprisonment.

        1.     *Nature and Circumstances of the Offense*

The nature and circumstances of this case are disturbing and include uniquely deviant and psychologically manipulative behavior. The defendant was calculating, he took steps to conceal his actions to avoid detection. But there's an even darker side to his particular offenses. This defendant tested the waters and then preyed on those he detected were most vulnerable. He had free access to their psychosocial histories and could be alone with the females in the unit that were under his treatment. After abusing them, the defendant pressured the victims to keep the sexual abuse secret.

In the case of K.B. and T.W., he indulged in a rouse that they were somehow romantically involved and that relationship was monogamous. The defendant abused M.W. on only one occasion, just after a class session in November of 2019, but coupled his abuse with physical and psychological force[3] when the defendant verbally coerced M.W. with a veiled threat upon her children and then physically directed her with his hands and body. The defendant routinely sexually abused K.B. and T.W. in a closet area located within the office space he had access to for private office sessions with these particular inmates, because of his special role as their counselor/teacher. Furthermore, the investigation revealed the defendant had a habit of providing contraband to these victims, items as seemingly innocent as Kool-aid, to bottled water to drink after he ejaculated in their bodies, and cigarettes.

The evidence across all victims and witnesses shows the defendant groomed his victims and then prodded the women he abused, or attempted to abuse, to keep their interactions "secret." A troubling fact surfaced in two distinct witness interviews where the interviewees revealed the defendant told them he had made sure to locate where cameras were in the previous BOP facilities

---

3   PSR ¶ 9.

he worked in and said this in broader discussions concerning illicit contact with female inmates in the past.

The defendant exhibited a clear pattern of activity that escalated over a relatively short period of time. No enhancement for multiple instances of abuse upon a single victim is available where adult wards are concerned. The U.S.S.G. allows for the unit assignment of 1 additional point, which the USPO has applied in this case, for each similar offense made upon victims that occurred after M.W.; however, this does not adequately account for the harm the individual victims in the other counts suffered – especially when the fact that the other 3 victims were abused on numerous occasions.

The guidelines do not account for the nature of the coercion the defendant employed in order to achieve his corrupt purpose. A sentence of 80 months is still less than half of the way to the maximum term of imprisonment of 15 years for this offense. Notably, unless, at minimum, a theoretical offender had minor victims, both enhancements were applied, and that theoretical offender had 7 more similarly situated victims – half of the maximum term of imprisonment set by Congress still could not be reached in the most egregious case.

In short, the nature and circumstances of the defendant's crimes exhibit a host of aggravating factors that supports a significant upward departure as to his term of imprisonment.

        2.    *History and Characteristics of the Defendant*

The defendant, age 43, comes before the Court as an otherwise law-abiding citizen before his crimes were exposed. He has no criminal history. [PSR ¶¶ 55-61.] He reports that he has back problems, depression, and anxiety and receives a certain amount of income each month from a disability program. [*Id.* ¶¶ 66, 68, and 77.] He has experienced great loss: The loss of an infant

9

child, a marriage, and his mother. [*Id*. ¶¶ 63-65.] The record lacks any evidence of financial difficulty, drug addiction, or any other reason to explain why the defendant would commit the crimes he did. It is not lost on the United States that keeping a clean record on the surface provided him with the opportunities he needed to commit these offenses.

In addition, the defendant's monthly income and net worth do not render him incapable of paying money: he is not indigent. [*Id*. ¶¶ 77-78.]

> 3. *Seriousness of the Offense, Promote Respect for the Law; Provide Just Punishment*

A carefully fashioned sentence of imprisonment must take into account the seriousness of the offense, promotes respect for the law, and provide a just sentence. This defendant committed serious crimes in a particularly deviant fashion. He was commissioned to enforce the law and take care of the very individuals he assaulted. His military service and oath as an officer support an inference that he knew better. His victims, although not sufficiently vulnerable mentally to qualify by the letter of the Sentencing Guidelines, were uniquely vulnerable as recovering addicts and he chose the most vulnerable from his classes – and only he was in a position to assess that. His professed background in forensic psychology emphasizes the unique training he had both to select victims and to understand how much damage he would inflict by sexually abusing them. In reflection on the seriousness of the offense, it's difficult to imagine a more disparate balance of power as between him, in his dual-role, and the particular women he chose to abuse. When called to account for the seriousness of his offensive conduct and to promote respect for the law, this factor is not just for him, but for the public, namely, similarly situated Officers, to know that the law demands respect, recognizes this behavior as particularly egregious, and will punish this

particularly egregious behavior accordingly. Only by departing upward from a guideline range of imprisonment will the "just punishment" factor be met.

4. *Need to Deter Future Criminal Conduct*

Section 3553(a)(2)(C) considers both specific deterrence as to the defendant and general deterrence as to the public. The United States assumes that the defendant will not ever be permitted to serve as a federal correctional officer in any respect once he is released from any term of imprisonment given his current convictions and the state sex offender registration the United States anticipates will follow. But a sentence of at least 80 months imprisonment is important here both to specifically deter the defendant and to send a message to all uniquely situated potential abusers. This behavior must be punished sufficiently in order to be certain the message is heard. These crimes happen when no one is watching, these crimes are calculated, these crimes are concealed by defendants, these defendants are in patient-provider relationships over and above an officer role, and these defendants are haloed with clean criminal records and a false perception that their character is equally virtuous. These are opportunistic crimes preying on the especially vulnerable where victims are documented drug and alcohol abusers. Often those very addictions are the result of prior sexual abuse, as in the case of T.W., which was known to the defendant – possibly even a part of his calculus in choosing her. This, of course, all happens within a power construct between an Officer, an Officer who also holds the key to time off a sentence because he is charged with treating them, and the wards want and are in need of what the program is supposed to provide. As such, there is both a need to specifically deter this defendant from abusing any future position of trust he may hold over another human being as well as to deter other similarly situated offenders who are currently engaging in this type of misconduct or considering it.

      5.    *Need to Protect Public from Defendant's Future Criminal Conduct*

This defendant duped the BOP into trusting him with specialized care and treatment of female inmates with histories of drug-abuse and addition, so it follows that 80 months of imprisonment followed by a significant term of supervised release will adequately protect the public from the defendant's future criminal behavior.

      6.    *Need to Provide Treatment to Defendant*

The defendant does not report any need for substance abuse or mental health treatment; however, his particularly deviant pattern of criminal sexual behavior warrants treatment. Probation highlights this need in the conditions recommended which bear, in particular respect, on the sentence deemed appropriate pursuant to this factor. Under 3553(a)(4) or (a)(5), the Court must consider a sentence that would allow the defendant to have certain treatment and access to programs. This defendant should be required to register as a sex offender as proscribed by law. He should be ordered to participate in a program for treatment of mental health and sexual disorders and undergo a sex offender risk assessment, psychosexual evaluation and other evaluations as an individual trained in this field deems needed and follow the rules and regulations of the sex offender treatment program implemented.   His access to any form of pornography, sexually stimulating performances or sexually oriented materials or other services should be restricted. In furtherance of this, the particular facts of this case need to be available to those who supervise him upon his release from any term of incarceration this Court may impose and to ensure the sex offender registration authorities are aware of the same. For all of these reasons, the United States concurs with the conditions and treatment recommendations of the USPO.

7. *Need to Avoid Unwarranted Disparities*

The defendant's crime falls outside the heartland of simple single criminal offenses conceivable under 2243(b). A sentence of at least 80 months for his particular crime is sufficient but not more than necessary and, though well above a guidelines sentence – is still less than half of the statutory maximum permissible for a single heinous commission of this crime. The United States is not aware of any defendant who has pleaded to multiple 2243(b) offenses with multiple victims and exhibited similar characteristics, skills, access to victims' private psychosocial histories and journals, who employed contraband in his grooming methods, and whose routine sexual abuse of victims in or around a span of five months often overlapped, and where the majority of victims were routinely sexually abused. No comparable case could be found.

8. *Restitution*

Restitution is mandatory and should be paid to the victims of his crimes but the amount, if any, owed to each victim will not be determined by the date of sentencing because the availability of providers remains limited for the victims seeking care. The longest period of time needed for a provider who is involved in evaluating victims seeking restitution in this case, for example, estimates needing until the first week of September to evaluate the facts, victim symptoms, and then be able to estimate the cost of the victims' harm resulting from the defendant's offense(s). The defendant has already agreed to pay restitution pursuant to his plea agreement. The United States will address bifurcation of this issue in a separate filing.

**C.  The Court Should Impose Mandatory Special Assessments but No Additional Fine**

In addition to a custodial sentence, the United States also respectfully asks the Court to impose all applicable mandatory special assessments.

U.S.S.G. § 5E1.2(a) specifies "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and it not likely to become able to pay any fine." The defendant's financial condition, as reflected in the PSR, indicates his ability to pay a fine is limited; however, the United States does not recommend the Court impose a fine on this particular defendant. The United States is seeking an upward departure with respect to the defendant's term of imprisonment with an unknown amount of restitution pending, the United States elects to allow room for the defendant to account for the of harm to victims to be evidenced in the form of restitution rather than in a financial sanction at this time. *See* U.S.S.G. § 5E1.2(d)(1), (2), and (4).

### III. Conclusion

For the reasons stated above, the United States submits that a sentence of 80 months imprisonment is reasonable and adequately accounts for each of the factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. Chapter 5 Part K, the aggravating circumstances evident in this sex offense case support a greater term of imprisonment through the application of an upward departure because the applicable guidelines in this case do not adequately take the unique factors of this defendant and his offenses into account.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

/s/ Tashena A. Fannin
Tashena A. Fannin
Assistant United States Attorney
260 W. Vine St., Suite 300
Lexington, KY 40507
Tel: (859) 685-4829
Tashena.fannin@usdoj.gov

/s/ Kate K. Smith
Kate K. Smith
Assistant United States Attorney
260 W. Vine St., Suite 300
Lexington, KY 40507
Tel: (859) 685-4855
Kate.Smith@usdoj.gov

**CERTIFICATE OF SERVICE**

On July 22, 2022, I electronically filed this motion through the ECF system, which will send the notice of electronic filing to all counsel of record.

/s/ Tashena A. Fannin
Assistant United States Attorney